**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| STEVEN WILLAND INC., | : |
| Plaintiff, | : |
|  | : **Civil Action No. 21-1869 (SRC)** |
| v. | : |
|  | : **OPINION** |
| MERIT HARDWARE INCORPORATED et al., | : |
| Defendants. | : |

**CHESLER, District Judge**

This matter comes before the Court upon a Motion for Default Judgment ("the Motion") filed by Plaintiff Steven Willand, Inc. against Defendants Merit Hardware Incorporated ("Merit Hardware"), Jeffrey Mullins, and Claribel Mullins (collectively, "Defendants"). (D.E. No. 69.) The Court has considered Plaintiff's Motion and the parties' accompanying submissions and resolves the matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. For the reasons set forth below, Plaintiff's Motion is **GRANTED.**

**I.    BACKGROUND**

Plaintiff filed the Complaint on February 4, 2021, alleging that due to Defendants' failure to render payment under a Credit Application/Condition of Sale Agreement ("Credit Agreement"), Defendants owed Plaintiff a balance of $280,324.56, and sought recovery of the balance owed along with accrued interest and an award of attorney's fees. (Compl. at 3, 6.) Following various

1

extensions granted by the Court, Defendants filed an Amended Answer and Counterclaim on January 31, 2022, alleging Plaintiff wrongfully terminated Merit Hardware as its dealer and sought damages for lost profits and financial harm. (D.E. Nos. 5, 6, 8, 17, 18.)

The docket indicates that Defendants failed to appear at a Court-ordered teleconference, (D.E. No. 22), requested numerous extensions and adjournments of various matters, many of which were after deadlines passed, (D.E. Nos. 5, 6, 10, 23, 34, 46, 53, 71, 73), and failed to comply with numerous Court orders, (D.E. Nos. 22, 25, 27, 31, 36, 38, 45, 48, 49, 51, 55).

Ultimately, on February 15, 2024, Magistrate Judge Waldor, pursuant to Fed. R. Civ. P. 72(b) and L. Civ. R. 72.1(a)(2) issued a Report and Recommendation ("R&R") recommending that the Court sanction Defendants by striking Defendants' responsive pleadings and counterclaim, and place Defendants in default. (D.E. No. 60.) On April 4, 2024, the Court entered an order adopting Magistrate Judge Waldor's R&R, sanctioning Defendants for noncompliance with Court Orders and persistent failure to comply with discovery obligations, and directed the Clerk of the Court to i) strike Defendants' Amended Answer and Counterclaim and ii) enter default against Defendants. (D.E. No. 66.)

On August 9, 2024, Plaintiff filed the Motion now pending before the Court. Following two extensions granted by the Court, Defendants submitted a brief in Opposition to the Motion on September 17, 2024. (D.E. No. 77.) Thus, this motion is fully briefed and ripe for adjudication.

I.     **LEGAL STANDARD**

It is well-established in the Third Circuit that "the entry of a default judgment is left primarily to the discretion of the district court." Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir. 1984). Federal Rule of Civil Procedure 37(b)(2)(A)(vi) provides that default judgment may

2

be entered as a sanction if a party fails to comply with a court order or permit discovery. Under Federal Rule of Civil Procedure 16(f), a court "may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney: (A) fails to appear at a scheduling or other pretrial conferences; (B) is substantially unprepared to participate–or does not participate in good faith- in the conference; or (C) fails to obey a scheduling or other pretrial order." In determining whether default judgment as a sanction is appropriate, the Third Circuit has instructed courts to weigh the following factors (the "*Poulis* favors"):

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 868 (3d Cir. 1984). Before it enters default judgment, the district court must find that the complaint's factual allegations "constitute a legitimate cause of action." Chanel, Inc. v. Gordashevsky, 558 F. Supp. 2d 532, 536 (D.N.J. 2008). The Court accepts as true the Complaint's factual assertions, except those pertaining to damages, which the movant must instead prove. See Comdyne, I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990).

II.   **DISCUSSION**[1]

As a preliminary matter, the Court is satisfied that the Complaint's allegations "constitute a legitimate cause of action." Chanel, 558 F. Supp. 2d at 536. The Complaint alleges that on October 15, 2012, Defendants and Plaintiff entered into a Credit Agreement in which Defendants

---

1 The Court notes the untimely manner of Defendants' Opposition to Plaintiff's Motion given Defendants sought two extensions to respond to the Motion after both Court deadlines passed.

3

failed to pay various invoices. Plaintiff seeks damages for the balances due under the Credit Agreement, as well as accrued interest and reasonable attorney's fees. In support of these claims, Plaintiff submitted unpaid invoices and account statements to establish the balances due as well as a declaration supporting its claim for accrued interest and reasonable attorney's fees. The Court thus finds Plaintiff's factual allegations, taken as true, constitute a legitimate cause of action.

In determining whether a default judgment is a proper sanction, the Court notes it was only after Defendants failed to produce outstanding discovery, despite being given a final warning that the Magistrate Judge would issue the R&R containing the default recommendation if the outstanding discovery had not been produced, that the R&R was issued and ultimately adopted by the Court. (D.E. No. 65, 66.) Indeed, Magistrate Judge Waldor noted that "Defendants have violated multiple court orders regarding the discovery in question . . . [and] is now considering sua sponte recommending that the District Court sanction Defendants' conduct by striking their pleadings and entering default against them.") (D.E. No. 55.) Still, the Magistrate Judge granted Defendants another extension and stated that, should Defendants fail to produce the outstanding discovery by a final deadline of January 19, 2024, the Magistrate Judge would be satisfied that "no sanctions short of dismissal [would] suffice and [would] enter a Report and Recommendation suggesting that the District Court strike the Defendants' pleadings, enter default against them, and permit Plaintiff to pursue a default judgment." (Id.)

On January 22, 2024, Plaintiff's counsel informed the Court that Defendants, once again, did not comply with the Court's Order by failing to produce the outstanding discovery by January 19, 2024. (D.E. No. 57.) As such, the R&R was entered as stated.

Put simply, the record of Defendants' actions, or inactions, in this case was simply

4

appalling and cried out for a resolution which propelled evaluation by the Court given the self-imposed obstructionist and dilatory conduct by Defendants.  The Court reviewed Magistrate Judge Waldor's R&R under the appropriate *de novo* review as well as Defendants' brief, (D.E. No. 62), in objection to the R&R. See In re U.S. Healthcare, 159 F.3d 142, 145-46 (3d Cir. 1998); see also Fed. R. Civ. P. 72(b).  The Court found that Defendants failed to offer any substantive arguments to controvert the Magistrate Judge's findings of persistent noncompliance with the Court's Orders, repeated failure to meet discovery obligations in this case, nor did Defendants attempt to argue that the Magistrate Judge erred in the analysis or application of the *Poulis* factors.  (D.E. No. 65.)

The Court concluded that pursuant to the Third Circuit's decision in *Poulis*, as well as Federal Rules of Civil Procedure 16(f) and 37(b)(2)(A), the Court should strike Defendants' responsive pleadings and enter default against Defendants.  (D.E. No. 65.) The Court's prior determination remains valid.

On August 9, 2024, Plaintiff filed the Motion as Defendants' pleadings had been stricken and Defendants were in default.  (D.E. No. 69.) The return date of the Motion was scheduled for September 3, 2024.  Six days after Defendants' opposition papers were due, Defendants requested an adjournment of the motion to September 16, 2024 "[a]s the undersigned was out of the country with limited access to a computer during this time, [and] additional time is required to prepare a response to the motion." (D.E. No. 71.)  Defendants stated "[t]his is the first and only request for adjournment of this motion." (Id.)  Despite the fact that Defendants' request for the extension was made six days after the deadline for when Defendants were obligated to submit opposition papers, the Court granted the Defendants' request for an adjournment of the Motion to September 16, 2024. (D.E. No. 72.)

5

The extended deadline for Defendants to file an opposition passed on September 3, 2024, without a submission from Defendants. On September 12, 2024, nine days after Defendants' opposition papers on the Motion were due and four days before the return date of the motion, Defendants requested a second extension on the Motion to October 7, 2024 in order to "address a potential resolution of this matter." (D.E. No. 73.) On the same day, Plaintiff responded with a letter to the Court opposing Defendants' request for another adjournment, indicating "Plaintiff did not object to Defendants' 'first and only' adjournment request as a professional courtesy" but saw no reason why further extensions should be granted. (D.E. No. 74.)

Defendants' request seeking a second extension to pursue "a potential resolution" was untimely as Defendants missed both deadlines for opposing the motion, and the Court denied the request for adjournment. (D.E. No. 75.) In short, Defendants provided no reasonable basis for granting an extension, particularly as the submissions were due before Defendants made any request to the Court. Indeed, Defendants after-the-fact requests are demonstrative of the dilatory and obstructionist conduct Defendants have pursued throughout this litigation. Yet, as an act of grace, the Court nevertheless granted Defendants a final opportunity to file opposition papers by September 17, 2024, at which time briefing on the Motion would close. (Id.)

The Court has carefully reviewed Defendants' Opposition, (D.E. No. 77) and concludes that it is largely an effort to persuade the Court that its prior Opinion adopting Magistrate Judge Waldor's R&R was incorrect, which this Court has already rejected (D.E. Nos. 65, 66.) Defendants further inform the Court that they intend to appeal the Court's decision. (D.E. No. 77.)

Defendants' Opposition attempts to reargue this Court's prior determination that the *Poulis* factors warranted extreme sanctions, by asserting it would have been more appropriate to award

6

attorney's fees to Plaintiff for costs incurred in trying to enforce Magistrate Judge Waldor's orders or simply striking Defendants' counterclaim. (D.E. No. 77.) However, Defendants ignore the fact that the repeated, intentional violations of Magistrate Judge Waldor's orders, while being warned of the potential consequences, demonstrate that lesser sanctions would be simply ineffective. (See e.g. D.E. No. 25 ("[G]oing forward, the Court will not be inclined to permit further extensions . . . absent a specific compelling showing of good cause"); D.E. No. 36 ("This will be the final opportunity to provide responses, sanctions will be considered in the event defense does not adequately provide responses."); D.E. No. 38 ("Defendants have now violated two consecutive orders to provide [] discovery and have ignored the Court's general threat of sanctions. If Defendants do not provide responses to Plaintiff's document requests . . . the Court will be satisfied that no lesser sanctions will suffice, and will therefore recommend that the District Court strike Defendants' pleading and enter defaults against them without opportunity to cure."); D.E. No. 45 ("In the event defendants do not comply [with the discovery scheduling order] the Court will consider serious consequence); D.E. No. 49 ("This will be the final opportunity for defense to produce documentation of loss of sales/accounts and profits . . . Failure to produce will result in consideration of a motion to preclude.").) Simply put, Defendants have embarked on a course of conduct of flouting direct orders by the Court in face of several warnings about what the consequences would be.

Next, Defendants argue default judgment is improper as to Defendants Claribel and Jeffrey Mullins (D.E. No. 77.) The Court finds Defendants' argument unpersuasive. The record demonstrates that Plaintiff informed all Defendants, and this Court, of Defendants' various discovery deficiencies. (See D.E. Nos. 24, 29, 35, 37, 44, 50, 52, 54, 57, 74).

Moreover, Defendant Merit Hardware's conduct cannot be viewed in isolation. As noted in the Court's prior Opinion and the Certification of Defendant Jeffrey Mullins, Defendant Jeffrey Mullins is the principal and owner of Merit Hardware. (Certification of Jeffrey Mullins, D.E. No. 18 at 2; D.E. No. 64 ¶ 2.) All Defendants, including Jeffrey Mullins, were aware of the outstanding discovery following Plaintiff's letter to the Court on July 13, 2023, and the Court's subsequent Text Order requiring Defendants to comply to the discovery schedule by August 14, 2023. (D.E. Nos. 44, 45.) Prior to Jeffrey Mullin's international travel, Defendants sought an extension through September 15, 2023, which the Court granted, and still failed to produce the discovery and comply with subsequent Court orders. (D.E. No. 46, 63, 65.) Thus, for the reasons set forth herein, the Court finds that an entry of default judgment is warranted.

## III.   DAMAGES

The remaining substantive issue in Defendants' Opposition concerns the award of attorney fees if the Court were to grant Plaintiff's Motion. Federal Rule of Civil Procedure 55 governs default judgments. In order to assess what damages Plaintiff is entitled to following an entry of default judgment, courts may "conduct hearings or make referrals . . . [to] determine the amount of damages." Fed. R. Civ. P. 55(b)(2). However, a Court need not hold a hearing where the damages are for a "sum certain or a sum that can be made certain by computation." Fed. R. Civ. P. 55(b)(1). Here, the Court finds it need not conduct an actual hearing as Plaintiff has provided the Court with outstanding invoices and declarations for costs owed to Plaintiff.

Plaintiff seeks damages for the total amount of unpaid invoices, accrued interest of 1.5% per month against "any past due balance" and reasonable attorney's fees "not to exceed 25% of the amount due and owing" as provided for under the Credit Agreement. (D.E. No. 69-1 at 5; Ex.

8

A to the Compl.) Plaintiff alleges Defendants' unpaid invoices total $251,030.09, the interest accrued amounts to $196,179.95, and Plaintiff expended $111,802.51 in reasonable attorney's fees. (D.E. No. 69-1 at 5.) Defendants argue that Plaintiff is not entitled to $111,802.51 in attorney's fees. (D.E. No. 77 at 2.) Instead, Defendants allege that if the Court were to award Plaintiff attorney's fees, the maximum recovery Plaintiff would be entitled to under the Credit Agreement is 25% of the total $251,030.09 unpaid invoices alleged in the Complaint, amounting to $62,757.52. (D.E. No. 77 at 2.)

Upon reviewing the submissions, the Court agrees with Plaintiff. The Condition of Sale within the Credit Agreement between Plaintiff and Defendants provides for a "reasonable attorney's fee, not to exceed 25% of the amount due and owing whether the same is collected through suit o[r] otherwise." (D.E. No. 69-1 at 5; Ex. A to the Compl.) Defendants' computation of the attorney's fees ignores the fact that the Condition of Sale contains a provision for accruing interest on unpaid invoices. (Ex. A at 13 ("A late payment charge of 1.5% per month will be assessed against any past due balance.").) As alleged by Plaintiff, starting May 1, 2020, Plaintiff began charging Defendants 1.5% in late payment fees on undue balances. (D.E. No. 69-2, Declaration of Scott Willand ("Willand Decl.") ¶ 13.) Plaintiff alleges that the accrued interest on the balance of outstanding invoices at 1.5% per month between May 1, 2020, and September 3, 2024, the return date for Plaintiff's Motion for Default Judgment, amounts to $196,179.95. (D.E. No. 69-2, Willand Decl. ¶¶ 13-14.) Therefore, the unpaid invoices plus the accrued interest amounts to $447,210.04 "due and owing" under the Credit Agreement. (D.E. No. 69-1 at 5.) Thus, 25% of the $447,210.04 total amount due and owing to Plaintiff is $111,802.51. (D.E. No. 69-1 at 5.)

9

Significantly, Defendants fail to point to anything in Plaintiff's submission to the Court in support of an award of attorney's fees that suggests the fees were unwarranted or excessive. Indeed, there is not even a suggestion that Plaintiff's counsel's fees were unduly high or unreasonable.

The Court further finds the attorney's fees sought by Plaintiff to be reasonable under the circumstances. It is apparent to the Court that the legal fees incurred by Plaintiff were the result of Defendants' own dilatory and evasive conduct in the litigation of this case. The docket itself reflects that although this would appear to be an ordinary, run of the mill collection case, in the 3.5 years this case has been pending, there have been more than 77 docket entries. Plaintiff's submission indicates that Plaintiff paid $23,560.51 in attorney fees to the law firm of Cooke & Santomauro, P.C. (D.E. No. 69-2 at 4-5.) After over a year delay in discovery, Plaintiff was forced to seek new counsel after its prior counsel had been appointed to the bench. Plaintiff then expended $100,729.00 in attorney's fees to Sills Cummis & Gross P.C. in connection with this litigation. (D.E. No. 69-2 at 4-5.) The Court has reviewed Plaintiff's certifications regarding the attorney's fees and finds the rates reasonable for the work done, and the time billed was reasonably expended on this litigation.

In light of the fact that there are no specific objections to any bill or unpaid invoice that has been made, the Court upon reviewing the submissions, cannot find anything unwarranted and concludes that the entire award sought should be granted. Plaintiff is awarded a total of $559,012.55. This award is comprised of $251,030.09 in unpaid invoices, $196,179.95 in accrued interest, and $111,802.51 in reasonable attorney's fees.[2]

---

2 In order to avoid duplication of reasonable attorney fees, the Court's prior December 21, 2023

## CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Default Judgment is GRANTED. Final judgment will be entered in the amount of $559,012.55 against all Defendants.

An appropriate Order follows.

 s/ Stanley R. Chesler\
STANLEY R. CHESLER, U.S.D.J.

Dated: September 27, 2024

---

Order (D.E. No. 55) is hereby incorporated into the Court's present Order.